**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JIM WANG, ET AL., | **Civ. No.: 1:23-CV-02402-KMW-AMD** |
| Plaintiffs, | Hon. Karen M. Williams, U.S.D.J. |
| | Hon. Anne Marie Donio, U.S.M.J. |
| vs. | |
| MASERATI NORTH AMERICA, INC., | **Motion Return Date: September 16, 2024** |
| | *Document Filed Electronically* |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**DEFENDANT MASERATI NORTH AMERICA, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFFS' EXPERT NICHOLAS PALUMBO**

*/s/ Kevin J. Penhallegon*

Kevin J. Penhallegon, Esq. (#038602012)
Tiffany M. Alexander, Esq. (#000692002)
Elyse N. Cohen, Esq. (#155212015)
NELSON MULLINS RILEY & SCARBOROUGH LLP
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
Phone: (443) 392-9417
kevin.penhallegon@nelsonmullins.com

***Attorneys for Defendant,***
***Maserati North America, Inc.***

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL STANDARD ......................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 5

        A.      Mr. Palumbo's Opinions Should be Excluded Because they are Unreliable ...........5

                1.      The Law Requires that Expert Opinions be Reliable ...................................6

                2.      There is a Generally Accepted and Reliable Methodology for Fire
                        Investigations .............................................................................................7

                3.      Mr. Palumbo Failed to Follow the Generally Accepted
                        Methodology for Fire Investigations ........................................................11

        B.      Mr. Palumbo's Opinions Should Be Excluded Because They Lack Fit,
                Meaning They Are Irrelevant and Will Not Assist the Trier of Fact ......................17

V.      CONCLUSION ................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Calhoun v. Yamaha Motor Corp.*,
  *U.S.A.*, 350 F.3d 316 (3d Cir. 2003) ...................................................................................3, 6

*Chester Valley Coach Works, Inc. v. Fisher-Price, Inc.*,
  No. 99 CV 4197, U.S. Dist. LEXIS 15902 (E.D. Pa. Aug. 29, 2001) .....................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)................................................................................................ *passim*

*Ebenhoech v. Koppers Indus., Inc.*,
  239 F. Supp. 2d 455 (D.N.J. 2002) ...........................................................................................6

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000)....................................................................................................19

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)................................................................................................................15

*Hoang v. Funai Corp.*,
  652 F. Supp. 2d 564 (M.D. Pa. 2009) .......................................................................................7

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994)....................................................................................... *passim*

*In re Soued*,
  689 F. Supp. 3d 1 (D.N.J. 2023) ...............................................................................................7

*In re TMI Litig.*,
  199 F.3d 158 (3d Cir. 2000).....................................................................................................5

*Kannankeril v. Terminix Int'l, Inc.*,
  128 F.3d 802 (3d Cir. 1997).....................................................................................................4

*Oddi v. Ford Motor Co.*,
  234 F.3d 136 (3d Cir. 2000).....................................................................................................4

*Padillas v. Stork-Gamco, Inc.*,
  186 F.3d 412 (3d Cir. 1999).....................................................................................................5

*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008)..............................................................6

*Schneider ex rel. Est. of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003).............................................................................................3, 4, 17

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
    949 F.3d 825 (3d Cir. 2020)................................................................................17

*United States v. Bo Zhou*,
    No. 06-cr-286 (JAP), 2008 U.S. Dist. LEXIS 65168 (D.N.J. Aug. 25, 2008).........................16

*United States v. Downing*,
    753 F.2d 1224 (3d Cir.1985)................................................................................5

*United States v. Uchendu*,
    No. 2:22-cr-00160-JNP-2, 2024 U.S. Dist. LEXIS 41407 (D. Utah Mar. 8,
    2024) .............................................................................................................4

**Rules**

Fed. R. Evid. 104(a)..............................................................................................3, 5

Fed. R. Evid. 702 ......................................................................................... *passim*

I.    **INTRODUCTION**

This is a product liability action against Defendant Maserati North America, Inc. ("MNA" or "Defendant") in which Plaintiffs Jim Wang, Dean Wang, and Yu Bai ("Plaintiffs") seek compensation for damage to their residential property located at 10 Fairway Drive, Voorhees, New Jersey 08043 (the "Property") caused by a fire. Plaintiffs allege that a 2018 GranTurismo, VIN ZAM45VLA7J0259456 manufactured by Maserati (the "Vehicle") was parked in the garage of the Property, and that some unknown defect in the Vehicle caused the fire. Plaintiffs' Complaint includes counts alleging that MNA is liable because the Vehicle is defective in its manufacturing, design, and its failure to warn.

To support their claims, Plaintiffs have designated a fire investigator, Nicholas Palumbo, as their sole expert. In sum, Mr. Palumbo's opinion is that the fire originated in the "engine compartment" of the Vehicle, but he can be no more specific than that and cites to few, if any, facts in support. Furthermore, Mr. Palumbo testified that he does not have an opinion as to what caused the fire, and he concedes that he does not have the requisite expertise to opine as to the cause of a fire involving a vehicle. Moreover, Mr. Palumbo does not have an opinion as to any alleged defect in the manufacturing or design of the Vehicle, or any failure to warn by MNA. In fact, Mr. Palumbo admits that he is not qualified to render any such opinions.

All of the opinions proffered by Mr. Palumbo relating to the origin of the fire at the Property should be excluded because he failed to follow the generally accepted methodology that is supposed to be used by fire investigators, thereby rendering his opinions unreliable. Specifically, Mr. Palumbo failed to properly consider all of the available facts, even though he acknowledged that those facts would be relevant to the analysis, and he specifically failed to consider the facts that tend to disprove his hypothesis. In essence, Mr. Palumbo defaults to an opinion that the fire

1

originated in the engine compartment of the Vehicle because he could not find any other potential cause of the fire. This type of confirmation bias is expressly prohibited by the generally accepted methodology used by fire investigators, and is the exact type of *ipse dixit* opinion that courts have said should be excluded as unreliable, thereby rendering Mr. Palumbo's testimony inadmissible.

Furthermore, because Plaintiffs cannot present any admissible evidence as to the cause of the fire or any alleged defect in the Vehicle, Mr. Palumbo's testimony should be precluded because it will not assist the trier of fact in determining the ultimate issue in this case. In fact, if Mr. Palumbo's opinion regarding the origin of the fire were admitted, it would actually tend to mislead the jury into thinking that something related to the Vehicle caused the fire when there is no admissible expert testimony to support that conclusion. Without an opinion on any alleged Vehicle defect in this product liability case, or how any such alleged defect could have caused the fire at the Property, Mr. Palumbo's opinions do not fit these proceedings and must be excluded.

## II.  **FACTUAL BACKGROUND**

MNA incorporates its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment and Motion to Exclude Testimony of Plaintiffs' Expert Nicholas Palumbo ("SUMF") herein. The following supplements the SUMF with additional facts relevant to the instant Motion.

In their Initial Disclosures served on July 30, 2023, Plaintiffs designated Mr. Palumbo as an individual having "knowledge of the cause and origin of the fire." SUMF at ¶ 91. Plaintiffs then disclosed Mr. Palumbo's report dated May 17, 2024. SUMF at ¶ 110. In that Report, Mr. Palumbo opined that, while "the cause of the fire cannot be determined, . . . the cause of the fire being a malfunction in the [Vehicle] cannot be ruled out." SUMF at ¶ 110. Mr. Palumbo opined further "that the origin of the fire was in the engine compartment of the [Vehicle]." SUMF at ¶

110.  Mr. Palumbo's deposition was completed on July 2, 2024, during which he confirmed that his only opinion is that the fire originated somewhere within the "engine compartment" of the Vehicle.  SUMF at ¶ 110.  Mr. Palumbo testified that he will not be rendering any opinion regarding the cause of the fire other than that it is "undetermined," and he will not be rendering any opinion regarding an alleged defect in the Vehicle.  SUMF at ¶ 141.

## III.    LEGAL STANDARD

Pursuant to Fed. R. Evid. 104(a), "[t]he court must decide any preliminary question about whether a witness is qualified[.]"  Such a preliminary question involves the admissibility of expert testimony under Fed. R. Evid. 702.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).  That Rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Trial judges are charged "with the responsibility of acting as 'gatekeepers' to exclude unreliable expert testimony[.]"  *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 320-21 (3d Cir. 2003) (citing *Daubert*, 509 U.S. at 597).

The Third Circuit "ha[s] explained that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit."  *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted).  First, "[q]ualification refers to the requirement that the witness possess specialized expertise."  *Id.*  Courts "have interpreted this requirement liberally, holding that 'a broad range of knowledge, skills, and training qualify an

3

expert.'" *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)).  Second, an expert's proffered "testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief." *Id.*  (citations and internal quotations omitted).  Third, "the expert testimony must fit the issues in the case.  In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Id.*

The party seeking to present expert testimony must establish that the pertinent admissibility requirements are met "by a preponderance of" the evidence.  *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) (quoting *Daubert*, 509 U.S. at 593, n.10).  The most recent amendments to Fed. R. Evid. 702 "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."  Fed. R. Evid. 702 advisory committee notes to 2023 amendments.

The amendments also make clear that many courts have erred in holding "that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility."  Fed. R. Evid. 702 advisory committee notes to 2023 amendments.  The amendments to Rule 702 emphasize that trial courts serve a crucial role in analyzing proffered expert testimony: "questions as to the sufficiency of the basis for an expert's opinion and the application of his methodology go to admissibility rather than weight." *United States v. Uchendu*, No. 2:22-cr-00160-JNP-2, 2024 U.S. Dist. LEXIS 41407, at *5 (D. Utah Mar. 8, 2024).  In other words, "[a]dmissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

4

In addition, the Third Circuit "ha[s] long stressed the importance of in limine hearings under Rule 104(a) in making the reliability determination required under Rule 702 and *Daubert*." *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417 (3d Cir. 1999) (citing *United States v. Downing*, 753 F.2d 1224, 1241 (3d Cir.1985)). This is especially the case "when a *Daubert* challenge is made in the context of a summary judgment motion or where summary judgment will inevitably be granted if the proffered evidence is excluded." *In re TMI Litig.*, 199 F.3d 158, 159 (3d Cir. 2000).

## IV.    <u>ARGUMENT</u>

Plaintiffs have designated Mr. Palumbo to opine that the fire at issue originated in the engine compartment of the Vehicle. SUMF at ¶ 110. Mr. Palumbo's opinions should be excluded because they do not satisfy the standard for admissibility established by Fed. R. Evid. 702. Specifically, Mr. Palumbo's opinions should be excluded because they are unreliable in that the opinions were not reached using the generally accepted methodology for fire investigations and did not account for the numerous facts that could support alternative explanations for the fire damage to the Vehicle. Furthermore, Mr. Palumbo's opinions should be excluded because they will not assist the trier of fact in determining the ultimate issue in dispute in this matter.

### A.    **Mr. Palumbo's Opinions Should be Excluded Because they are Unreliable.**

Mr. Palumbo failed to follow the generally accepted methodology in completing his investigation in this case. Most importantly, he failed to consider numerous facts that would tend to disprove the hypothesis he developed before even beginning the investigation, despite acknowledging that the generally accepted methodology requires that a fire investigator consider all relevant facts, and the facts he failed to consider here would be pertinent to his analysis.

Therefore, Mr. Palumbo's opinions in this case easily fail the reliability requirements of Fed. R. Evid. 702.

### 1.    The Law Requires that Expert Opinions be Reliable.

This Court has stated that:

> [A]n expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable. In order for the expert testimony to be "reliable," we have required that the testimony be based on the "methods and procedures of science," rather than on "subjective belief or unsupported speculation." Moreover, *Daubert* does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology. Admissibility decisions focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been determined. . . . The question, therefore, is whether the expert has good grounds for reaching his opinion.

*Ebenhoech v. Koppers Indus., Inc.*, 239 F. Supp. 2d 455, 466 (D.N.J. 2002) (internal citations omitted). "A trial court should consider several factors in evaluating whether [an expert's] particular methodology is reliable." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 247 (3d Cir. 2008). These factors include:

(1)    whether a method consists of a testable hypothesis;
(2)    whether the method has been subject to peer review;
(3)    the known or potential rate of error;
(4)    the existence and maintenance of standards controlling the technique's operation;
(5)    whether the method is generally accepted;
(6)    the relationship of the technique to methods which have been established to be reliable;
(7)    the qualifications of the expert witness testifying based on the methodology; and
(8)    the non-judicial uses to which the method has been put.

*Id.* at 247-48 (citing *In re Paoli*, 35 F.3d at 742 n.8). "In assessing reliability, a court need not rely exclusively on this list and may take into account any other relevant factors . . .; however, this list provides an ample starting point." *Calhoun*, 350 F.3d at 321 (citing *In re Paoli*, 35 F.3d at 742). Furthermore, the "good grounds" requirement "extends to each step in an expert's analysis." *In*

6

*re Paoli*, 35 F.3d at 743. In other words, "*any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.*" *Id.* at 745 (emphasis in original).

### 2. There is a Generally Accepted and Reliable Methodology for Fire Investigations.

There is no dispute as to what the generally accepted methodology is regarding fire investigations. The National Fire Protection Association publishes and regularly updates a *Guide for Fire and Explosion Investigations* ("NFPA 921"). *See* SUMF at ¶ 49. Joseph P. Hales, Jr., the Chief Fire Marshal for the Camden County Fire Marshal's Office who investigated this fire, called NFPA 921 "a guide in the field of fire and science and fire investigation." SUMF at ¶ 50. Five other fire investigators retained by various parties and insurance companies to analyze the evidence in this case also consider NFPA 921 to be the standard guide for fire investigations. *See* SUMF at ¶¶ 73, 77, 81, 84, 88. The two experts retained by MNA conducted their investigations in accordance with the methodology outlined in NFPA 921. *See* SUMF at ¶¶ 147, 172, 174. Likewise, Mr. Palumbo explained that NFPA 921 is "a guide" for "fire and explosions investigations" and he agreed that it is the generally accepted methodology in the field of fire investigations. SUMF at ¶ 101.

Courts have also recognized that "the NFPA 921 methodology is widely considered to be reliable for purposes of Rule 702." *Hoang v. Funai Corp.*, 652 F. Supp. 2d 564, 570 (M.D. Pa. 2009); *In re Soued*, 689 F. Supp. 3d 1, 11 (D.N.J. 2023) ("challeng[ing] the reliability of NFPA 921's methodology . . . would be a daunting task because courts in this District and throughout the country have routinely found NFPA 921's methodology to be reliable under Rule 702."). Accordingly, MNA contends that the NFPA 921 methodology is generally accepted and reliable

7

and Mr. Palumbo failed to follow NFPA 921's generally accepted methodology, thereby rendering his opinions unreliable.

NFPA 921 provides a systematic approach to be used in fire investigations generally, and also adapts this methodology to be used in determining both the origin and cause of a fire, and to be used for vehicle fires specifically.  Section 4.2 of NFPA 921 explains that "[t]he systematic approach recommended is based on the scientific method, which is used in the physical sciences. This method provides an organizational and analytical process that is desirable and necessary in a successful fire investigation."  *See* SUMF at ¶ 49.

A few of these steps are important to highlight.  Section 4.3.4 provides that "[t]he scientific method requires that all data collected be analyzed . . . and that must take place before the formation of the final hypothesis. . . .  If the investigator lacks expertise to properly attribute meaning to a piece of data, then assistance should be sought."  *See* SUMF at ¶ 49.  Next, Section 4.3.5 states that "[b]ased on the data analysis, the investigator produces hypotheses to explain the phenomena[.]"  *See* SUMF at ¶ 49.  Then, according to Section 4.3.6, the investigator must test each hypothesis, and

> testing . . . should be designed to disprove, or refute [each] hypothesis. . . .  Working to disprove a hypothesis is an attempt to find all the data or reasons why the hypothesis is not supported or not true, rather than simply finding and relying on data that support the hypothesis or why the hypothesis is true.  This method of testing can prevent "confirmation bias," which can occur when the hypothesis or conclusion relies only on supporting data.

*See* SUMF at ¶ 49.  NFPA 921 describes the concept of "confirmation bias" in Section 4.3.10:

> Different hypotheses may be compatible with the same data.  When using the scientific method, testing of hypotheses should be designed to disprove a hypothesis (i.e., falsification of the hypothesis), rather than relying only on confirming data that support the hypothesis.  Confirmation bias occurs when the investigator relies exclusively on data that supports the hypothesis and fails to look for, ignores, or dismisses contradictory or nonsupporting data.  The same data may support alternative and even opposing hypotheses.  The failure to consider

8

> alternative or opposing hypotheses, or prematurely discounting seemingly contradictory data without appropriate analysis and testing can result in incorrect conclusions. A hypothesis can be said to be valid only when rigorous testing has failed to disprove the hypothesis. Disproving the hypothesis is a process in which all the evidence is compared against the proffered hypothesis in an effort to find why the hypothesis is not true.

*See* SUMF at ¶ 49.

Furthermore, NFPA 921 Chapter 18 lays out "a methodology to follow in determining the origin of a fire." *See* SUMF at ¶ 49. According to Section 18.1,

> The origin of a fire is one of the most important hypotheses that an investigator develops and tests during the investigation. Generally, if the origin cannot be determined, the cause cannot be determined, and generally, if the correct origin is not identified, the subsequent cause determination will also be incorrect.

*See* SUMF at ¶ 49. Section 18.2 describes "[t]he overall methodology for determining the origin of the fire[.]" *See* SUMF at ¶ 49. This methodology

> is the scientific method as described in Chapter 4. This methodology includes recognizing and defining the problem to be solved, collecting data, analyzing the data, developing hypotheses, and most importantly, testing the hypothesis or hypotheses. In order to use the scientific method, the investigator must develop at least one hypothesis based on the data available at the time. These hypotheses should be considered "working hypotheses," which upon testing may be discarded, revised or expanded in detail as new data is collected during the investigation and new analyses are applied. This process is repeated as new information becomes available.

*See* SUMF at ¶ 49. NFPA 921 further provides the following regarding "fire spread analysis" in Section 18.2.1.1:

> The purpose of the fire spread analysis is to determine whether the resulting physical damage and available data are consistent with the area of origin hypothesis. For example, a fire starting in a wastebasket is a plausible working hypothesis, but the resulting fire damage would be highly dependent on the position of the fires fuel and any subsequently ignited fuels. If the wastebasket had been located in an area with no adjacent fuel, then the results may be significantly different than if the wastebasket had been located next to a polyurethane sofa. Both hypotheses posit the same first item ignited, but the outcome is very different. Thus, if the origin hypothesis is not consistent with the resulting growth and spread of the fire, it is not a valid hypothesis. . . .

9

*See* SUMF at ¶ 49.

Similarly, Chapter 19 applies the scientific method to "determining the fire cause[,]" which "generally follows origin determination [and] . . . can be considered reliable only if the origin has been correctly determined."  *See* SUMF at ¶ 49.  The overall methodology for determining causation provided in Section 19.2 is identical to the methodology above for analyzing origin.  *See* SUMF at ¶ 49.  Notwithstanding the fact that the same general methodology is used for determining both origin and cause, the two concepts are undisputedly distinct, especially because the origin needs to be determined before analyzing the cause.  SUMF at ¶ 146.  A fire's origin is "the area in which the fire is determined to have originated," and a fire's cause is "what caused the fire in that area of origin."  SUMF at ¶ 145.  Mr. Palumbo conceded that a fire's origin and cause are distinct by admitting that he does not have the requisite experience or expertise to opine as to the cause of a fire involving a vehicle and, as a result, Plaintiffs retained another investigator to do so.  SUMF at ¶¶ 130-31.

Mr. Palumbo testified that he is familiar with NFPA 921.  *See* SUMF at ¶¶ 101-04, 106, 118.  He testified that a conclusion that relies only on data in support of one hypothesis without considering alternative hypotheses is improper under NFPA 921's generally accepted methodology.  SUMF at ¶ 103.  He also admitted that a proper fire investigation will consider all evidence and data that is relevant to the determination of the origin and cause of a fire, including information from witnesses and other investigators with expertise in areas beyond his own.  SUMF at ¶¶ 106-09.

### 3. Mr. Palumbo Failed to Follow the Generally Accepted Methodology for Fire Investigations.

Despite his familiarity with NFPA 921, Mr. Palumbo's own testimony establishes that he did not follow NFPA 921's generally accepted methodology in his investigation here. Mr. Palumbo's opinion is "that the origin of the fire was in the engine compartment of the [Vehicle]." SUMF at ¶ 110. Because Mr. Palumbo believed that the damage to the Vehicle compared to the surrounding areas showed that the Vehicle suffered "the most intense burn," he opined that the fire had to burn in the car the longest. SUMF at ¶ 111. He then explained that for the Vehicle's "hood to be consumed, there had to be a fire within the engine compartment and it had to burn for a while." SUMF at ¶ 113. Specifically, Mr. Palumbo opined that the fire would have had to burn in the engine compartment for "at least a good 15 minutes" to inflict the damage that was done. SUMF at ¶ 115. However, Mr. Palumbo simply answered "I can't tell you" when asked how long the fire burned, despite admitting that the Voorhees Fire Department Report contains information on when the department arrived and contained the fire, and acknowledging that the amount of time the fire burned could be important to his origin and cause analysis. SUMF at ¶ 116.

To conclude that the fire originated in the engine compartment of the Vehicle, Mr. Palumbo relies solely on the fact that "[t]he hood was consumed" and "[t]he heavy damage to the interior of the engine compartment." SUMF at ¶ 112. Yet, Mr. Palumbo explicitly acknowledged the possibility that a fire originating external to a vehicle could cause the vehicle to sustain significant damage. SUMF at ¶ 118. Moreover, Mr. Palumbo stated that he eliminated the trunk as the location where the fire originated due to "the lack of fire damage." SUMF at ¶ 119. However, the trunk cover, like the hood, was also consumed in the fire—"[i]t was gone." SUMF at ¶ 119. The evidence demonstrates that Mr. Palumbo failed to consider the facts and data that would need to be analyzed regarding the significance of both the trunk cover and hood cover being consumed in

11

the fire.  Mr. Palumbo testified that he learned from Mike Zazula, an automotive engineer retained by Plaintiffs, that the trunk cover was made of fiberglass, and Mr. Palumbo opined that fiberglass burns easier than metal.  SUMF at ¶¶ 120, 131-132.  Yet, Mr. Palumbo admitted that he does not know where Mr. Zazula got his information.  SUMF at ¶ 132.  In fact, Mr. Palumbo conceded that he never saw any source materials that describe the composition of either the trunk cover or the hood cover.  SUMF at ¶ 132.

Mr. Palumbo answered "[y]es" when asked "[i]f the fire had originated in the engine compartment of the vehicle, the fire would have burned in the engine compartment until all of the combustible material was consumed, correct?"  SUMF at ¶ 121.  However, Mr. Palumbo observed that some combustible materials remained in the engine compartment following the fire.  SUMF at ¶ 122.  He testified further that the presence of remaining combustible materials in the engine compartment could support a hypothesis that the fire originated external to the Vehicle.  SUMF at ¶ 122.  In addition, Mr. Palumbo testified that white smoke—the color of smoke that the residents of the Property saw—is "normally not consistent with" the burning of plastic components within the engine compartment of a vehicle.  SUMF at ¶¶ 30, 125.

Mr. Palumbo also made clear that he reviewed only those materials Plaintiffs' counsel provided to him.  SUMF at ¶ 127.  Therefore, in addition to his own inspection of the Property and the Vehicle, Mr. Palumbo relied on only the reports from the Voorhees Fire Department and the Camden County Fire Marshal's Office when authoring his report.  SUMF at ¶ 126.  During his deposition, Mr. Palumbo testified that he did not speak with any residents who were present at the time of the fire and that he was unaware that any of the residents were deposed.  SUMF at ¶ 128.  Yet, Mr. Palumbo admitted that he "can't think of a time when" information from the residents of the house where a fire occurred would not be relevant to his opinions as a fire investigator.  SUMF

12

at ¶ 107. For example, while Mr. Palumbo testified that his understanding was that the Vehicle was used the afternoon of the fire, he had no idea that Mr. Maxey testified that the vehicle had not been driven in months, and that Mr. McKay testified that it had not been driven in at least two days at the time of the fire. SUMF at ¶ 129. Mr. Palumbo admitted that this information might have been relevant to his opinions. SUMF at ¶ 129.

Relatedly, Mr. Palumbo testified that, as a fire investigator, he should rely on other experts who have expertise in areas beyond his own, and it is necessary to consider all relevant evidence, including the data of other investigators who inspected the same evidence. SUMF at ¶ 108. Mr. Palumbo admitted that he does not have the requisite experience or expertise to opine as to the cause of fires involving vehicles, and acknowledged that fires involving vehicles require a different level of expertise. SUMF at ¶ 130. In fact, Mr. Palumbo acknowledged that Plaintiffs had also retained Mike Zazula, an automotive engineer who was brought in to assist Mr. Palumbo due to his specific expertise regarding vehicle fires. SUMF at ¶ 131. Mr. Palumbo also acknowledged that there were numerous other fire investigators who inspected the same evidence he did, including some who have specialized expertise in analyzing fires involving vehicles. SUMF at ¶¶ 76, 87, 136. Despite this, Mr. Palumbo did not review or consider the data developed by those other fire investigators—the investigators who testified that NFPA 921 is a generally accepted methodology for fire investigations—in reaching his opinions and authoring his report. SUMF at ¶ 135.

Notably, two of those other fire investigators consider themselves to be experts in determining the origin and cause of fires in vehicles specifically. SUMF at ¶¶ 76, 87. One of those investigators, Jeffrey Lange, opined that the fact that many combustibles remained in the engine compartment indicated that the fire did not originate in the engine compartment. SUMF at

13

¶ 78.  The other fire investigator, Jonathan Costa, agreed, and added that the burn patterns were not consistent with the conclusion that the fire originated in the Vehicle.  SUMF at ¶¶ 89-90. Notwithstanding his lack of expertise regarding vehicle fires specifically, and his admission that "referring to other experts who are experts in that field would be a good thing," Mr. Palumbo simply disagreed when confronted with the above-mentioned experts' reports at his deposition: "I still feel that the vehicle was involved somehow."  SUMF at ¶¶ 109, 137.

Mr. Palumbo disagreed with these experts despite conceding that "i[f] you're not an expert in a given field, referring to other experts who are experts in that field would be a good thing." SUMF at ¶ 109.  Mr. Palumbo is aware that there are classes he can take to become certified in fire investigations involving vehicles specifically, but he never obtained those certifications. SUMF at ¶ 96.  Nor does he have a degree or any training in engineering, whether mechanical, electrical, or automotive.  SUMF at ¶ 97.  Moreover, Mr. Palumbo has never worked for a vehicle manufacturer, he has no experience in designing automobiles or designing, testing, or inspecting component parts of automobiles, and he has never been designated or testified as an expert in either mechanical or automotive engineering.  SUMF at ¶ 97.

Mr. Palumbo's lack of expertise is exhibited further by his overly generalized opinion, in which he places the origin of the fire in the engine compartment of the Vehicle generally.  Because the fire consumed the Vehicle's hood, Mr. Palumbo opined that "there had to be a fire within the engine compartment and it had to burn for a while."  SUMF at ¶ 113.  Yet, Mr. Palumbo gives no opinion as to where in the engine compartment the fire originated specifically.  He stated only that the "[h]eaviest burn [was] in the front of the engine compartment versus the rear of the compartment."  SUMF at ¶ 114.  Mr. Palumbo's lack of specificity demonstrates his failure to consider relevant facts.  Mr. Palumbo "basically said [the origin] is under the hood because the

14

hood was consumed and it is there because that's where I said it is." SUMF at ¶ 167. Phrased another way, "Mr. Palumbo basically says the fire started in the engine compartment because the hood was melted. Well, there's lots of reasons why the hood melted. It doesn't mean the fire started in the engine compartment." SUMF at ¶ 185. At its core, Mr. Palumbo's opinion exhibits classic confirmation bias and is nothing more than his own *ipse dixit* that, in the absence of other evidence, cannot be admitted. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

Ultimately, Mr. Palumbo's testimony establishes that he did not follow NFPA 921's generally accepted methodology. Mr. Palumbo did not analyze all data collected as required by NFPA 921's methodology. He did not review the testimony of witnesses to the fire. He did not review the data collected and generated by other fire investigators who have expertise in areas in which he admitted he is not an expert. And, most significantly, Mr. Palumbo did not consider facts that do not support his hypotheses, nor did he account for alternative explanations for the fire damage the Vehicle sustained. Specifically, Mr. Palumbo never mentioned the aluminum ladder that melted in front of the Vehicle or the wood shelf in front of the Vehicle that was severely damaged, and he did not consider how those facts impact his opinions regarding the origin of the fire. *See* SUMF at ¶¶ 52, 53, 159, 160, 164. Mr. Palumbo also did not properly address: the combustibles remaining in the Vehicle, the fact that the smoke seen by the residents of the house was white and therefore inconsistent with a fire in the engine compartment of a vehicle that would

15

have caused black smoke, the fact that the trunk was consumed in the fire just like the hood was, and other evidence that would tend to disprove his hypothesis. NFPA 921 required Mr. Palumbo to take "all the evidence" and compare it "against the preferred hypothesis in an effort to find why the hypothesis is not true." *See* SUMF at ¶ 49. It is clear that he did not do that here and, therefore, his ultimate opinion is unreliable and inadmissible.

In *United States v. Bo Zhou*, this Court excluded an expert's testimony because the expert did not apply NFPA 921's generally accepted methodology. No. 06-cr-286 (JAP), 2008 U.S. Dist. LEXIS 65168, at *15-17 (D.N.J. Aug. 25, 2008). This Court explained "that the methodology applied by [the expert] to perform his investigation is not apparent from his report, there is nothing to suggest that he applied the methodology required by NFPA 921, and [the expert's] report appears based on subjective belief, rather than scientific methods." *Id.* at *16. This Court concluded that "[t]he mere assertion that [the expert] applied a methodology in conformance with NFPA 921 is insufficient to establish that" the expert in fact did so, and therefore the expert's "proffered testimony is not sufficiently reliable and must be excluded." *Id.* at *15-17.

In a similar case before the United States District Court for the Eastern District of Pennsylvania, an expert claimed to rely on NFPA 921 to provide support for his conclusions. *Chester Valley Coach Works, Inc. v. Fisher-Price, Inc.*, No. 99 CV 4197, U.S. Dist. LEXIS 15902, at *10 (E.D. Pa. Aug. 29, 2001). The court held that if the expert had followed NFPA 921—a "universally recognized standard methodology[—]in arriving at his origin and cause conclusions, [it] would have little trouble admitting his testimony." *Id.* at *15. However, the court concluded that the expert's opinion was unreliable as his testimony demonstrated that he "deviated from [NFPA 921's methodology] repeatedly and significantly." *Id.*

16

Accordingly, because Mr. Palumbo deviated from NFPA 921's generally accepted methodology, his opinions are unreliable and his testimony should be excluded.[1]

### B. Mr. Palumbo's Opinions Should Be Excluded Because They Lack Fit, Meaning They Are Irrelevant and Will Not Assist the Trier of Fact.

In addition to reliability, the trial court's gatekeeping function also requires the court to examine whether the proposed "expert's testimony 'fits' the proceedings[.]" *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 835 (3d Cir. 2020). "[T]he expert testimony must fit the issues of the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404. The Third Circuit has explained that "even if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for purposes of the case.*" *In re Paoli*, 35 F.3d at 743 (emphasis in original). Mr. Palumbo's opinion regarding the origin of the fire lacks fit because it is not helpful to the trier of fact in determining the issues in dispute in this case.

First and foremost, Mr. Palumbo was retained in this case to attempt to determine both the origin and the cause of the fire. SUMF at ¶ 91. Ultimately, it is Mr. Palumbo's opinion that the cause of the fire cannot be determined. Thus, he has no opinion as to the cause of the fire, and, by his own acknowledgment, he does not even have the requisite expertise to opine as to the cause of fires involving vehicles. SUMF at ¶¶ 110, 130. Further, Mr. Palumbo offers no opinion on any

---

[1] As explained herein, Mr. Palumbo conceded that his only opinion relates to the origin of the fire. However, to the extent he attempts to present opinions regarding either the cause of the fire or any alleged defect in the Vehicle, those opinions should likewise be excluded for the same reasons described herein, in addition to the fact that Mr. Palumbo, by his own admission, conceded that he is not qualified to give such opinions. *See* SUMF at ¶ 141.

alleged Vehicle defect and acknowledges that he does have the requisite expertise to do so.  SUMF at ¶ 141.

Second, the cause of a fire cannot be determined unless the origin of the fire is first determined.  Mr. Palumbo agreed that, pursuant to NFPA 921's methodology, the first step in a fire investigation is to determine the origin of the fire, and only after the origin is determined can the cause of a fire be analyzed.  SUMF at ¶ 104.  If an opinion regarding a fire's origin is unreliable, as Mr. Palumbo's is here, any opinion regarding the cause would also be unreliable—Mr. Palumbo himself agreed with this fact of NFPA 921's generally accepted methodology.  SUMF at ¶ 104.

To prevail on their claims under the New Jersey Product Liability Act, Plaintiffs would need to establish admissible evidence in support of their allegation that the fire was caused by a defect in the Vehicle.  Before evidence regarding cause can be established, the origin of the fire must be established by admissible evidence.  As described above, Plaintiffs' sole expert, Mr. Palumbo, cannot present admissible opinions regarding the cause of the fire.  Likewise, neither Mr. Palumbo, nor any other witness for Plaintiffs, can present admissible opinions regarding either an alleged defect in the Vehicle or how any such alleged defect caused the fire.  Therefore, Mr. Palumbo's opinion would not assist the fact finder in determining the ultimate issue in this case.

Because Plaintiffs cannot present any admissible evidence regarding the alleged *cause* of the fire, Mr. Palumbo's opinion regarding the alleged *origin* of the fire would not be "sufficiently reliable so that it will aid the jury in reaching accurate results." *In re Paoli*, 35 F.3d at 744 (citations omitted).  Indeed, without any admissible evidence regarding an alleged defect in the Vehicle or the cause of the fire, if Mr. Palumbo's opinion regarding the origin of the fire were admitted, it would tend to mislead the jury into thinking that something related to the Vehicle caused the fire when, in fact, there is no admissible expert testimony to support that conclusion.  Such an opinion

that can mislead the fact finder does not comply with the "fit" requirement.  *See Elcock v. Kmart Corp.*, 233 F.3d 734, 756 n.13 (3d Cir. 2000) (an opinion based on "assumptions not present in the plaintiff's case . . . misleads the fact-finder and arguably does not comply with the 'fit' requirement of" Fed. R. Evid. 702).

Accordingly, it is clear that Mr. Palumbo's opinion does not fit these proceedings and must be excluded on that basis as well.

## V.    CONCLUSION

For the foregoing reasons, Defendant Maserati North America, Inc. respectfully requests that this Court exclude the opinions of Plaintiffs' expert, Nicholas Palumbo, and preclude Mr. Palumbo from testifying at trial.

Dated: August 23, 2024                    Respectfully submitted,


                                          */s/ Kevin J. Penhallegon*
                                          Kevin J. Penhallegon, Esq. (#038602012)
                                          Tiffany M. Alexander, Esq. (#000692002)
                                          Elyse N. Cohen, Esq. (#155212015)
                                          NELSON MULLINS RILEY & SCARBOROUGH LLP
                                          1000 Westlakes Drive, Suite 275
                                          Berwyn, PA 19312
                                          Phone: (443) 392-9417
                                          kevin.penhallegon@nelsonmullins.com

                                          ***Attorneys for Defendant,***
                                          ***Maserati North America, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of August, 2024, a copy of Defendant Maserati North America, Inc.'s Motion to Exclude Plaintiffs' Expert Nicholas Palumbo, accompanying Brief in Support, and Proposed Order were electronically filed via CM/ECF and served on all counsel of record, pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the District of New Jersey.

Date: August 23, 2024

*/s/ Kevin J. Penhallegon*
Kevin J. Penhallegon, Esq. (#038602012)
NELSON MULLINS RILEY & SCARBOROUGH LLP
1000 Westlakes Drive, Suite 275
Berwyn, PA 19312
Phone: (443) 392-9417
kevin.penhallegon@nelsonmullins.com

*Attorneys for Defendant,*
*Maserati North America, Inc.*